CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Shannon Coit (Bar No. 298694)
(E-Mail:  shannon_coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
Maksim Zaitsev

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-cr-00154-SPG |
| Plaintiff, | **MAKSIM ZAITSEV'S BRIEF IN SUPPORT OF MOTION FOR BAIL REVIEW (CR 88)** |
| v. | |
| Maksim Zaitsev, | |
| Defendant. | |

Maksim Zaitsev, through his counsel of record, Deputy Federal Public Defender Shannon Coit, hereby submits this brief in support of his motion for bail review (CR 88).  The government opposes bond based on danger to the community and risk of flight/non-appearance.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 28, 2025        By  /s/ Shannon Coit

Shannon Coit
Deputy Federal Public Defender
Attorney for Maksim Zaitsev

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

    A.    Mr. Zaitsev Is in the U.S. Seeking Political Asylum and Is Accused of Injuring an ICE Officer in an Isolated Incident. ..............................................2

    B.    The Court Reviews the Previous Detention Order De Novo. .........................3

III. DISCUSSION .....................................................................................................4

    A.    "Liberty Is the Norm, and Detention Prior to Trial Is the Carefully Limited Exception," and the Government Has the Burden to Show No Conditions for Release Exist. ..............................................................................4

    B.    The Defense Proposes Comprehensive Bond Conditions. .............................5

    C.    The Bond Package Reasonably Assures That Mr. Zaitsev Is Not a Risk to the Community. ...............................................................................................5

    D.    With a Pending Asylum Application, History of Appearing, and Growing Community, Mr. Zaitsev Is Not at Risk of Non-Appearance. .........................7

IV. CONCLUSION ................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gavino v. MacMahon*,
   499 F.2d 1191 (2d Cir. 1974) (per curiam) ...................................................4

*United States v. Alqahtani*,
   2020 WL 4904068 (D.N.M. Aug. 20, 2020) ...............................................7

*United States v. Chen*,
   820 F. Supp. 1205 (N.D. Cal. 1992) (Walker, J.)........................................ 10

*United States v. Fernandez-Alfonso*,
   816 F.2d 477 (9th Cir. 1987) ......................................................................4

*United States v. Figueroa-Alvarez*,
   2023 WL 4315592 (D. Idaho July 3, 2023).................................................8

*United States v. Giordano*,
   370 F. Supp. 2d 1256 (S.D. Fla. 2005)....................................................... 10

*United States v. Gray*,
   651 F. Supp. 432 (W.D. Ark. 1987) ........................................................... 10

*United States v. Hernandez-Saldivar*,
   2022 WL 4474893 (N.D. Ala. Sept. 26, 2022) ............................................8

*United States v. Hir*,
   517 F.3d 1081 (9th Cir. 2008) ....................................................................4

*United States v. Koenig*,
   912 F.2d 1190 (9th Cir. 1990) ....................................................................3

*United States v. Motamedi*,
   767 F.2d 1403 (9th Cir. 1985) ............................................................. 4, 6, 7

*United States v. O'Brien*,
   895 F.2d 810 (1st Cir 1990)........................................................................9

*United States v. Orta*,
   760 F.2d 887 (8th Cir. 1985) ......................................................................5

*United States v. Salerno*,
   481 U.S. 739 (1987)........................................................................... 3, 4, 5

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*United States v. Townsend*,
   897 F.2d 989 (9th Cir. 1990) ........................................................ 5, 6, 7, 10

*United States v. Valdez*,
   2022 WL 3999957 (D.N.M. Sept. 1, 2022) ............................................. 8

*United States v. White*,
   2021 WL 2155441 (M.D. Tenn. May 27, 2021) ....................................... 6

**Statutes**

18 U.S.C. § 3142 ....................................................................................... 4

18 U.S.C. § 3142(g) .............................................................................. 1, 4

18 U.S.C. § 3145(b) .................................................................................. 3

Bail Reform Act ..................................................................................... 4, 6

Moreover, under the Bail Reform Act .......................................................... 1

**Other Authorities**

Justice Statistics, *Pretrial Release and Misconduct in Federal District
   Courts, Fiscal Years 2011–2018*, tbl.9 (Mar. 2022) ............................... 8, 9

Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*,
   123 Yale L. J. 1344, 1347–48 (2014) ....................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Maksim Zaitsev is a young man who escaped Russia to seek political asylum in the United States.  Over the last two years, he has worked to rebuild a new life in Los Angeles with his long-term partner, who he refers to as his wife, without incurring as much as a speeding ticket.  He found employment, moved to an apartment with his partner, and established a community in his new home.  Mr. Zaitsev cannot go back to Russia, nor would he go to any other country.  He is in the United States because this is where he wants to be, and this is where he will remain if released.

What is alleged to have happened in this case is the only factor that the Magistrate Judge listed to determine that Mr. Zaitsev is such a danger to the community that he must be detained.  While no federal employee should ever be at risk while on the job, no federal employee, law enforcement agent, or any other person will be in danger if Mr. Zaitsev is released on bond.  And the government certainly cannot prove—*by clear and convincing evidence*—that no set of bond conditions allow for Mr. Zaitsev's release based on danger.  Mr. Zaitsev has no criminal history or prior allegations of violence.  He does not have any weapons, nor were any weapons at issue in this case.  At most, what is alleged in the Complaint an isolated incident that happened under extreme circumstances, and there are valid reasons to doubt what happened in this case occurred as alleged.  Moreover, under the Bail Reform Act, the Court must give the least amount of weight of the evidence in this case when considering the factors for release.  That applies when assessing risk of non-appearance as well.  And other factors, including that Mr. Zaitsev's history of appearance, support that he is not at risk of non-appearance.  Moreover, the Court can set bond conditions to mitigate any potential risk that Mr. Zaitsev might pose to the community or for non-appearance.

Given all of these facts and the factors the Court must consider under the Bail Reform Act, Mr. Zaitsev respectfully requests that this Court set reasonable terms and

1

1    conditions of release and order him released forthwith.

2                        **II. FACTUAL BACKGROUND**

3    **A.      Mr. Zaitsev Is in the U.S. Seeking Political Asylum and Is Accused**

4              **of Injuring an ICE Officer in an Isolated Incident.**

5          Maksim Zaitsev is a thirty-five year old man who moved to the United States

6    from Russia to seek political asylum.  He arrived in the U.S. in late 2022 with his long

7    term partner, who he refers to as his wife.  Mr. Zaitsev and his partner have spent the

8    last two years rebuilding their lives in Southern California.  Mr. Zaitsev works as a

9    mechanic and for Uber and recently saved enough money to rent an apartment in Costa

10   Mesa.  He also began to build a community in his new home, including his friend who

11   dropped everything to attend his last bond hearing and is offering to be a surety.  Mr.

12   Zaitsev has never been arrested or convicted of any crime.

13         According to the Complaint, last month, Mr. Zaitsev and his partner received a

14   G-56 letter from the Department of Homeland Security requesting that they report to

15   ICE offices to discuss the status of their immigration case.  Mr. Zaitsev and his partner

16   did exactly what they were told.  And, on February 25, 2025, they reported to the ICE

17   offices in downtown Los Angeles as directed.

18         Shortly after arriving, Mr. Zaitsev was called into the back area.  According to

19   the Complaint, Mr. Zaitsev was handcuffed.  (Dkt. No. 1 ("Compl.") ¶ 9.)  Notably, the

20   Complaint does not state that Mr. Zaitsev resisted or fought while being handcuffed.

21   (*See id.*)  And, as proffered by the defense, Mr. Zaitsev was handcuffed with his hands

22   behind his back.  The Complaint then states that Mr. Zaitsev become "agitated" (not

23   violent or belligerent, or that he resisted arrest) while being escorted down a hallway.

24   (*Id.*)  The Complaint goes on to describe Mr. Zaitsev's behavior more fully, allegedly

25   only that he "screamed towards an individual that [that ICE officers believed was his

26   wife] and [that he] dropped his weight."  (*Id.*)  He is not described as punching, pulling

27   away, or screaming at the officers.  (*See id.*)  In fact, at this point, Mr. Zaitsev is not

28                                        2

alleged to be acting hostile or aggressive towards the ICE officers in any way.  (*See id.*)
And this non-hostility continues.  (*See id.*)  What is alleged to have happened next is
that the ICE officers "lost their balance and fell to the ground."  (*Id.*)  Again, Mr.
Zaitsev is not alleged to have pulled down or even tripped the officers.  (*See id.*)  It is
only when the two ICE officers allegedly "attempted to regain control of" Mr. Zaitsev
(who was handcuffed with his hands behind his back) that he allegedly bit one of the
officers.  (*Id.*)  When Mr. Zaitsev appeared in duty court the next day, his forehead and
right eye were swollen and covered in bruises and red marks.

**B.    The Court Reviews the Previous Detention Order De Novo.**

At the first bond hearing on February 26, 2025, the pre-trial services officer was
unable to contact anyone in the U.S. to verify Mr. Zaitsev's background or serve as a
surety.  Magistrate Judge Jacqueline Chooljian granted the government's request for
detention.  The defense sought reconsideration of this decision providing new facts,
including surety resources, and a hearing was held on March 11, 2025.  Judge
Chooljian ordered detention again.  (Dkt. No. 16.)  In the written order, "instant offense
allegations/resisting arrest" is listed to support that there is an unmitigated risk to the
safety of community.  (*Id.*)  "[L]argely unverified background information, minimal
time in CDCA, family ties outside U.S.; [and] instant allegations/resisting arrest" is
listed as the factors listed to support a risk of non-appearance  (*Id.*)

This Court has the authority to review the magistrate judge's detention order. 18
U.S.C. § 3145(b).  A district court reviews such an order de novo.  *See United States v.
Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

1

**III. DISCUSSION**

2   **A.**   **"Liberty Is the Norm, and Detention Prior to Trial Is the Carefully**

3   **Limited Exception," and the Government Has the Burden to Show No**

4   **Conditions for Release Exist.**

5   Almost fifty years ago, in *United States v. Salerno*, Chief Justice Rehnquist

6   articulated the long standing ideal "[i]n our society[ is that] liberty is the norm, and

7   detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481

8   U.S. 739, 755 (1987).  Congress codified this ideal in the Bail Reform Act,

9   "guarantee[ing ]in a noncapital case the defendant will have the pretrial right to release

10   on bail except in extreme and unusual circumstances." *Gavino v. MacMahon*, 499 F.2d

11   1191, 1195 (2d Cir. 1974) (per curiam).  In other words, through the Bail Reform Act,

12   Congress "mandate[d the] release of a person facing trial under the least restrictive

13   condition or combination of conditions." *United States v. Motamedi*, 767 F.2d 1403,

14   1405 (9th Cir. 1985).   It also requires courts to "dispose of every alternative before

15   ordering pretrial incarceration under the Bail Reform Act." *United States v.*

16   *Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987).

17   Following these directives, detention is authorized *only if* the government proves:

18   (i) by clear and convincing evidence, that no set of conditions will reasonably assure

19   the safety of any other person or the community; and (ii) by a preponderance, that no

20   set of conditions will reasonably assure the defendant's appearance.  18 U.S.C. § 3142;

21   *see also Salerno*, 481 U.S. at 741, 750-52; *United States v. Hir*, 517 F.3d 1081, 1086

22   (9th Cir. 2008); *Motamedi*, 767 F.2d at 1405.  The Court must consider four factors in

23   determining whether the government has made the standard for pretrial detention: (1)

24   the nature and circumstances of the offense; (2) the weight of the evidence; (3) the

25   history and characteristics of the person (including his character, physical and mental

26   condition, family ties, employment, financial resources, length of residence in the

27   community, community ties, past conduct, history relating to drug and alcohol abuse,

28

1  criminal history, or record concerning appearance at court proceedings); and (4) the

2  nature and seriousness of the danger to any person or the community posed by the

3  person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

4      **B.    The Defense Proposes Comprehensive Bond Conditions.**

5      Detention is appropriate only if, after considering every possible combination of

6  conditions, the government proves that none can sufficiently mitigate (but not

7  eliminate) the risk of nonappearance or danger. *United States v. Orta*, 760 F.2d 887,

8  890-91 (8th Cir. 1985) ("The judicial officer must . . . consider whether one of the

9  codified conditions or any combination of the conditions will 'reasonably assure' the

10  defendant's appearance and the safety of the community. The wide range of restrictions

11  available ensures, as Congress intended, that very few defendants will be subject to

12  pretrial detention.").

13      There is a set of bond conditions that will reasonably assure Mr. Zaitsev is not a

14  danger to the community and that he will appear in this case.  Those conditions include:

15      •    $10,000.00 unsecured bond signed by Grant Galustyan, a U.S. citizen and

16          Mr. Zaitsev's friend;

17      •    Travel restrictions to the Central District of California;

18      •    Surrender of all passports and travel documents and certify that he will not

19          apply for any additional travel documents;

20      •    Submit to Pretrial Services supervision; and

21      •    Mental health assessment and psychological counseling;

22      The Court may also order any additional conditions that it deems appropriate,

23  including location monitoring.

24      **C.    The Bond Package Reasonably Assures That Mr. Zaitsev Is Not a**

25          **Risk to the Community.**

26      The defense's proposed bond package more than reasonably assures that Mr.

27  Zaitsev will not be a danger to the community.  With nothing more than the allegations

28

5

1 | in this case, the government cannot meet its heavy burden to show, by clear and

2 | convincing evidence, otherwise. *See Salerno*, 481 U.S. at 741, 750-52.

3 |       As an initial matter, it is well-established that the weight of the evidence against

4 | a defendant is the "least important" factor when reviewing the government's pretrial

5 | detention request. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("The

6 | weight of the evidence against the defendant is a factor to be considered but it is 'the

7 | least important' of the various factors." (quoting *Motamedi*, 767 F.2d at 1408)).  This

8 | rationale safeguards the presumption of innocence, the very bedrock of our criminal

9 | justice system. *See id.*  It also guards against the possibility of making a "preliminary

10 | determination of guilt" that then leads to punishment in the form of a refusal to grant

11 | release. *Motamedi*, 767 F.2d at 1408.

12 |       The only factor supporting the Magistrate Judge's finding that Mr. Zaitsev is

13 | such a danger to the community that he cannot be released is the allegations contained

14 | in the Complaint.  (Dkt. 17 at 3.)  These allegations do not amount to clear and

15 | convincing evidence that there are *no* conditions to reasonably ensure—not

16 | guarantee—that Mr. Zaitsev is not a danger to the community. *See United States v.*

17 | *White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("[F]ederal crimes are

18 | generally serious with serious penalties, and yet under the Bail Reform Act release is

19 | generally favored in federal criminal cases—as it should be, since locking up persons

20 | prior to conviction should be something of a last resort.").  This is especially true in

21 | light of the additional facts supporting that Mr. Zaitsev is of no risk to the community.

22 | These facts include that, over the two years in the U.S., Mr. Zaitsev has had no criminal

23 | convictions or arrests, or any other allegations of violence.  He does not have any DUIs,

24 | restraining orders, or even speeding tickets.  He is not alleged to have used a weapon,

25 | nor does he own any weapons.  There is simply nothing in the record to support a

26 | finding, by clear and convincing evidence, that no conditions exist to ensure that Mr.

27 | Zaitsev is not a danger to the community.

28 |

And as to the allegations in this case, there are many reasons to doubt what is alleged in the Complaint.  First, Mr. Zaitsev was handcuffed with his hands behind his back.  Second, at least two ICE officers were with Mr. Zaitsev.  Third, if additional facts (or allegations) existed in favor for the government, such as Mr. Zaitsev being aggressive upon being handcuffed or at any other point during the initial arrest, those allegations would have been included in the Complaint.  Instead, the sworn affidavit that supports the Complaint includes carefully worded allegations that do not paint a picture of a person who cannot be release from custody prior to trial.  (*See* Compl. ¶ 9 (describing Mr. Zaitsev only as "agitated" and "dropp[ing] weight" and that he and the officers "lost their balance" and omitting other allegations such as Mr. Zaitsev hitting, kicking, or engaging in any other non-passive resistance).)  The allegations in the Complaint do not amount to "clear and convincing evidence" to support the government's request for detention, especially in light of the other factors that carry more weight.

In sum, Mr. Zaitsev's lack of criminal history and stable home life is much more indictive as to whether he would engage in any violence in the future.  There are conditions that can be placed on Mr. Zaitsev to reasonably assure he will not be a danger to the community, and the government has not met its heavy burden to prove, by clear and convincing evidence, otherwise.

> **D.      With a Pending Asylum Application, History of Appearing, and Growing Community, Mr. Zaitsev Is Not at Risk of Non-Appearance.**

There is no risk of non-appearance here, and the government cannot meet its burden that there is no combination of conditions to reasonably assure Mr. Zaitsev's appearance in this case.  *See Motamedi*, 767 F.2d at 1406.

At the previous hearing, the government pointed to Mr. Zaitsev's non-citizenship as a factor for non-appearance, but this alone is not sufficient.  While the mere fact that

1   Mr. Zaitsev is not a citizen "may be taken into account, [] alienage does not by itself tip

2   the balance either for or against detention." *Townsend*, 897 F.2d at 994.  Instead,

3   detention is usually reserved for those who have a history of failing to appear.  *See,*

4   *e.g., United States v. Alqahtani*, 2020 WL 4904068 at *2-3 (D.N.M. Aug. 20, 2020)

5   (detaining a defendant due to "history of failing to appear for court proceedings"); *see*

6   *also United States v. Hernandez-Saldivar*, 2022 WL 4474893 (N.D. Ala. Sept. 26,

7   2022) (history of non-appearance at court proceedings); *United States v. Valdez*, 2022

8   WL 3999957 at *12 (D.N.M. Sept. 1, 2022) (history of non-appearance at court

9   proceedings).  Mr. Zaitsev has no such history of nonappearance.  In fact, Mr. Zaitsev

10  has already proven that when he is instructed to appear, he will do so.  Mr. Zaitsev was

11  at the ICE offices that day because he was complying with an agency letter requesting

12  he appear at a specific date and time.

13      Further, the data and reasoning that debunks the assumption that undocumented

14  defendants[1] are more likely to not appear, as compared to U.S. citizens.  As a District

15  Court within the Ninth Circuit explained:

16      Alien defendants who illegally enter this country, or illegally
        reenter this country after removal, do so for many reasons: to
17      flee political persecution in their home country[and for other
        stated reasons].   But they share a common trait: they
18      voluntarily chose to come to this country and stay here.
        Presuming that they are any more likely than nonalien
19      defendants to leave this country or the jurisdiction to avoid
        prosecution—just because they came here from another
20      country—is misplaced.   Critically, this presumption is not
        supported by empirical proof. . . . [A]lien defendants granted
21      pretrial release were less likely to fail to appear or violate
        conditions of release than non-aliens defendants.
22

23      *United States v. Figueroa-Alvarez*, 2023 WL 4315592, at *6 (D. Idaho July 3,

24  2023).  Data from the Department of Justice backs this up.  *See* U.S. Dept. of Justice

25  Bureau of Justice Statistics, *Pretrial Release and Misconduct in Federal District*

26  ───────────────────

27      [11] Because Mr. Zaitsev has a pending asylum application and entered the U.S.
    legally, he is typically not considered an "undocumented" person; however, his status is
28  analogous to undocumented persons in this context.

1    *Courts, Fiscal Years 2011–2018*, at 11 tbl.9 (Mar. 2022).  Undocumented individuals

2    have an even lower rate of nonappearance than U.S. citizens: U.S. citizens fail to

3    appear 0.9% of the time whereas undocumented individuals fail to appear 0.5% of the

4    time.  *See id.*  So, compared to US citizens, undocumented defendants are also more

5    likely to comply with other conditions of release, less like to be rearrested for a new

6    offense, and less likely to have their bond revoked.  *Id.*

7          Other factors support that Mr. Zaitsev will appear in this case.  He has a pending

8    asylum application in the United States with a hearing set in July 2025 and has lived in

9    the country for over two years rebuilding his life, including working and getting an

10    apartment.  He also has surety resources.  His friend, Grant Galustyan[2], is willing to

11    post a $10,000.00 unsecured bond.  If this amount is not enough for the Court, the

12    Court can increase it as necessary.  Courts often set an amount for bond without an

13    identified surety, then it is up to the defense to locate a sufficient surety prior to release.

14    Though it is not needed, this bond creates a significant incentive for Mr. Zaitsev to

15    comply with all his bond conditions.  Lastly, the Court can add location monitoring if

16    necessary.[3]

17    _____

18        [2] Pre-trial services also spoke with Mr. Zaitsev's friend, Grant Galustyan, and

19    though pre-trial services listed information that Mr. Galustyan could not verify (such as birth date, which can the government can verify), Mr. Galustyan could verify several facts about Mr. Zaitsev.  Mr. Galustyan verified that Mr. Zaitsev's family is in Russia,

20    he has no children, he arrived in the U.S. two years ago, where he lives, and employment information.  Mr. Galustyan also attended the last bond hearing in person.

21        [3] If the Court needs additional assurance as to flight, the evidence suggests that

22    electronic monitoring is effective at reducing risk of flight.  *See, e.g.,* Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344,

23    1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he

24    question of finding other ways of ensuring a nondangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European

25    and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the

26    defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding

27    that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight").  Indeed, it is so effective at constricting liberty that it should

28

1    Finally, as a practical matter, Mr. Zaitsev is a young man with the majority of his

2    life ahead of him who is seeking a new home in the United States.  He is in the U.S.

3    because he wants to live here.  So much so that he is seeking asylum.  He cannot return

4    to Russia, nor does he want to live in any other country.  If  Mr. Zaitsev absconded, he

5    would be forced to give up his chance at asylum and hide out in another country that

6    does not have an extradition treaty with the United State.  Such a life is not worth it for

7    him, especially given the guidelines at issue here.  *See also United States v. Giordano*,

8    370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("[I]t is generally accepted that more than

9    evidence of the commission of a serious crime and the fact of a potentially long

10    sentence is required to support a finding of serious risk of flight.").  Again, the

11    allegations of this case do not support a risk of non-appearance, and even if they did, it

12    is the "least important" factor when considering pretrial detention request.  *See*

13    *Townsend*, 897 F.2d at 994; *see also United States v. Gray*, 651 F. Supp. 432, 436

14    (W.D. Ark. 1987) ("[T]he court does not believe that . . . any court should presume that

15    every person charged is likely to flee simply because the evidence against him appears

16    to be weighty. . . . Such a presumption would appear to be tantamount to a presumption

17    of guilty, a presumption that our system simply does not allow.").

18    In short, there are no factors indicating that Mr. Zaitsev poses a risk of flight.

19    This is certainly a situation where a combination of conditions can reasonably assure

20    his appearance.

## IV. CONCLUSION

22    This is not a close case, but even if it was, close cases should result in release.

23    *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.)

24    (citing *Motamedi*, 767 F.2d at 1405–06) ("To give effect to the principle that doubts

25    regarding the propriety of release be resolved in favor of the defendant, the court is to

26

27

28    only be imposed if it is a part of the least restrictive conditions necessary to "reasonably
assure" appearance and community safety.

10

1   rule against detention in close cases."). The government cannot meet its heavy burden

2   that, by clear and convincing evidence, no set of conditions will reasonably assure the

3   safety of any other person or the community or, by the preponderance of the evidence,

4   that no set of conditions will reasonably assure Mr. Zaitsev's appearance. Mr. Zaitsev

5   had been in the U.S. for years without incident until he voluntarily showed up the ICE

6   offices. What happened next has yet to be established, and the allegations in the

7   Complaint cannot support an order of detention.

8           Accordingly, this Court should reverse the Magistrate Judge's order of detention

9   and order Mr. Zaitsev's release with conditions.

10

11                                                Respectfully submitted,

12

13                                                CUAUHTEMOC ORTEGA
                                                  Federal Public Defender

14

15  DATED:  March 28, 2025          By  */s/ Shannon M. Coit*
                                        _____
16                                        Shannon M. Coit
                                          Deputy Federal Public Defender
17                                        Attorney for Maksim Zaitsev

18

19

20

21

22

23

24

25

26

27

28
                                           11