1   BILAL A. ESSAYLI
    United States Attorney
2   LINDSEY GREER DOTSON
    Assistant United States Attorney
3   Chief, Criminal Division
    RAHUL R.A. HARI (Cal. Bar No. 313528)
4   NEIL P. THAKOR (Cal. Bar No. 308743)
    Assistant United States Attorneys
5   General Crimes Section
         1200 United States Courthouse
6        312 North Spring Street
         Los Angeles, California 90012
7        Telephone: (213) 894-6159/6595
         E-mail:    Rahul.Hari@usdoj.gov
8                   Neil.Thakor@usdoj.gov

9   Attorneys for Plaintiff
    UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. 2:25-cr-00154-SPG

13           Plaintiff,                GOVERNMENT'S OPPOSITION TO
                                       DEFENDANT'S EX PARTE APPLICATION
14                v.                   FOR ORDER OF RELEASE AND/OR
                                       DISMISSAL OF THE CASE WITH
15  MAKSIM ZAITSEV,                    PREJUDICE; DECLARATION OF BRIAN C.
                                       PETERSON
16           Defendant.
                                       Location:    Courtroom of the
17                                                  Hon. Sherilyn Peace
18                                                  Garnett

19

20       Plaintiff United States of America, by and through its counsel

21  of record, the United States Attorney for the Central District of

22  California and Assistant United States Attorneys Rahul Hari and Neil

23  Thakor, hereby files its Opposition to Defendant's Ex Parte

24  Application for Order of Release and/or Dismissal.

25  //

26

27

28

1       This Opposition is based upon the attached memorandum of points

2   and authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4

5    Dated: April 11, 2025           Respectfully submitted,

6                                       BILAL A. ESSAYLI
    United States Attorney

7

8                                       LINDSEY GREER DOTSON
    Assistant United States Attorney
    Chief, Criminal Division

9

10                                      /s/ _____
    RAHUL R.A. HARI

11                                      NEIL P. THAKOR
    Assistant United States Attorneys

12

13                                      Attorneys for Plaintiff
    UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                           PAGE

TABLE OF AUTHORITIES.................................................1

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

      A.   Defendant's Immigration History..........................2

      B.   Defendant's Criminal Charge..............................3

      C.   Defendant's Detention Under the INA and Attorney
           Visitation Policy........................................4

III.  LEGAL STANDARD.................................................5

      A.   The Bail Reform Act and the Immigration and
           Nationality Act..........................................5

      B.   Applicable Detention Authority Under the INA.............6

IV.   ARGUMENT.......................................................7

      A.   The Immigration and Nationality Act is Independent of
           the Bail Reform Act......................................7

      B.   Defendant Has Reasonable Access to Counsel...............9

      C.   Dismissal Is Inappropriate Without a Showing of Injury
           and Prejudice...........................................10

V.    CONCLUSION....................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**CASES**

Ekene v. Cash, 2012 WL 4711723 (C.D. Cal. May 14, 2012).............9

Pino v. Dalsheim, 558 F. Supp. 673 (S.D.N.Y. March 8, 1983).........9

United States v. Baltazar-Sebastian, 990 F.3d 939 (5th Cir. 2021)......................................................7

United States v. Diaz-Hernandez, 943 F.3d 1196 (9th Cir. 2019)...1, 7

United States v. Lett, 944 F.3d 467 (2d Cir. 2019)...............7, 8

United States v. Lewis, 873 F.2d 1279 (9th Cir. 1989)............2, 9

United States v. Morrison, 449 U.S. 361 (1981)....................10

United States v. Pacheco-Poo, 952 F.3d 950 (8th Cir. 2020)..........8

United States v. Salerno, 481 U.S. 739 (1987)......................5

United States v. Santos-Flores, 794 F.3d 1088 (9th Cir. 2015)......11

United States v. Soriano Nunez, 928 F.3d 240 (3d Cir. 2019)......1, 7

United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012)..................................................7

United States v. Vasquez-Benitez, 919 F.3d 546 (D.C. Cir. 2019).....8

United States v. Veloz-Alonso, 910 F.3d 266 (6th Cir. 2018).........8

United States v. Yostin Sleiker, et al., 5:25-mj-00140-KK, (C.D. Cal. Apr. 8, 2025)...........................................11

United States v. Zarate, 2019 WL 6493927 (D. Nev. Dec. 2, 2019)....10

**STATUTES**

18 U.S.C. § 3142, et seq.,..........................................5

8 U.S.C. § 1101, et seq......................................1, 2, 5, 6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      Defendant Maksim Zaitsev is detained by the United States

4  Immigration and Customs Enforcement ("ICE") in immigration custody

5  pursuant to the express terms of the Immigration and Nationality Act

6  ("INA"), 8 U.S.C. § 1101, et seq.[1]  Defendant asks the Court to

7  ignore the INA because the Court previously found that defendant

8  should be released on bond pursuant to the Bail Reform Act, a wholly

9  separate statute, and either order defendant's release from

10 immigration custody or dismiss the indictment.

11     Defendant's motion fails as a matter of law because, as

12 explained by the Ninth Circuit, "detention of a criminal defendant

13 pending trial pursuant to the Bail Reform Act and detention of a

14 removable alien pursuant to the Immigration and Nationality Act are

15 separate functions that serve separate purposes and are performed by

16 different authorities."  United States v. Diaz-Hernandez, 943 F.3d

17 1196, 1199 (9th Cir. 2019) (cleaned up).  Accordingly, although

18 defendant relies on a non-binding district court decision that

19 predates Diaz-Hernandez, "[n]o court of appeals . . . has concluded

20 that pretrial release precludes pre-removal detention."  United

21 States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (collecting

22 cases).  This Court should find the same and deny defendant's

23 extraordinary and legally baseless request for immediate release from

24 immigration detention.

25

26

27

28     [1] Defendant is subject to mandatory detention under 8 U.S.C. §
   1225(b) as an "arriving alien," as defined under 8 U.S.C. §
   1001.1(q), and discretionary detention under 8 U.S.C. § 1226(a)(1).

1    Defendant's motion is also factually baseless.  The routine

2  inconveniences of scheduling legal visits with defendant (whether in

3  immigration custody or pretrial criminal detention) is insufficient

4  to establish a claim of inadequate access to counsel.  See United

5  States v. Lewis, 873 F.2d 1279, 1280 (9th Cir. 1989).  More to the

6  point, the DFPD's declaration in support of defendant's motion listed

7  a myriad of ways that the defense can communicate with defendant to

8  prepare for trial in this case, including in-person visits,

9  telephonic calls, and video appointments, but the declaration failed

10  to allege that the defense in fact tried to communicate with

11  defendant using one or more of the many alternative communication

12  methods and was in fact unable to do so.  That is because, as

13  explained further below, it is easier to conduct in-person legal

14  visits and schedule calls at Desert View Annex, where defendant is

15  currently detained, than what is alleged by the defense.

16    The Court should deny the motion in full.

17  **II.    STATEMENT OF FACTS**

18    **A.    Defendant's Immigration History**

19    On or about December 16, 2022, defendant and his wife applied

20  for entry into the United States from Mexico as asylees at the San

21  Ysidro Port of Entry.  See Government's Motion in Limine No. 3 at 2-

22  3, Dkt. 38.  Defendant and his wife identified themselves as citizens

23  of Russia and presented their Russian passports to immigration

24  authorities.  Id. at 3.  Defendant did not possess a valid unexpired

25  immigrant visa, reentry permit, border crossing card, or other valid

26  documents allowing him to enter or remain in the United States,

27  thereby making him removable from the United States under the INA.

28  8 U.S.C.§ 1182(a)(7)(A)(i)(I).  Id.  Accordingly, defendant was

2

1   issued a Form I-862, Notice to Appear and "paroled into the United

2   States pending 240 proceedings."  Id.  Defendant's notice to appear

3   identifies defendant as "an arriving alien," and states that

4   defendant is "subject to removal from the United States."  Id.

5        On or about February 6, 2025, Supervisory Detention and

6   Deportation Officer Carlos Fuentes, an authorized immigration

7   officer, signed an I-200 administrative arrest warrant for defendant.

8   Id.  Mr. Fuentes identified that the probable cause for defendant's

9   arrest was "the pendency of ongoing removal proceedings against the

10  subject."  Id.

11       **B.    Defendant's Criminal Charge**

12       On February 25, 2025, defendant reported to the Federal Building

13  in downtown Los Angeles for an appointment at the U.S. Citizenship

14  and Immigration Services office.  The appointment was a law

15  enforcement ruse to safely arrest defendant in a controlled

16  environment pursuant to the administrative arrest warrant.  Defendant

17  was handcuffed and walked away from the private room where he was

18  arrested towards a non-public elevator.

19       When defendant entered a hallway, defendant began resisting the

20  arresting officers, including kicking off the wall, dropping his body

21  weight to the ground, and turning back towards the lobby.  When

22  officers turned defendant forward, including by directing his face

23  forward, defendant bit down on the finger of one of his arresting

24  officers, lacerating flesh and fracturing his arresting officer's

25  finger.  Defendant has been charged with a single count of assault on

26  a federal officer resulting in bodily injury in violation of 18

27  U.S.C. § 111(a)(1), (b).

28

On February 26, 2025, defendant appeared for an initial appearance on a criminal complaint before the duty magistrate judge and was ordered detained.  Minutes of Initial Appearance, Dkt. 4.  On March 11, 2025, the magistrate court denied defendant's application for reconsideration of pre-trial detention.  Minutes of Detention Hearing, Dkt. 15.  On April 2, 2025, this Court heard argument on defendant's application for review and reconsideration of defendant's pre-trial detention and ordered defendant released under the Bail Reform Act.  Amended Criminal Minutes, Dkt. 32.

## C.    Defendant's Detention Under the INA and Attorney Visitation Policy

On April 4, 2025, defendant was taken into custody on his immigration detainer under the INA and transported to Desert View Annex in Adelanto, California, where he is currently detained. Desert View Annex is approximately 85 miles from the Los Angeles office of the Federal Public Defender in San Bernadino County, within the Central District of California.

Criminal defense attorneys are permitted to see their clients at Desert View Annex by appointment or walk-in.  See Declaration of Brian Peterson ("Peterson Decl.") at ¶¶ 5-6.  Appointments are available seven days a week (weekends and holidays included) and can be made up to one week in advance.  Id. at ¶ 4, Ex. 1.  Walk-ins are allowed with a valid bar card or a copy or photograph of a bar card. Id. at ¶ 6.  Contrary to the defense's claims, in-person attorney visits are not subject to the one-hour time limit.  Id.  Attorneys can also contact their clients through video appointments.  Id. at ¶ 7.  Video appointments are subject to the one-hour time limit to give all detainees equal access to virtual appointments with their

4

attorneys.  Id.  Paralegals, legal support staff, and translators can

accompany attorneys on visits with clients, though they must receive

ICE clearance in a process that takes approximately fifteen minutes.

Id. at 8.

**III. LEGAL STANDARD**

    **A.    The Bail Reform Act and the Immigration and Nationality Act**

    Congress enacted the Bail Reform Act, 18 U.S.C. § 3142, et seq.,

to "give the courts adequate authority to make release decisions that

give appropriate recognition to the danger a person may pose to

others if released...."  United States v. Salerno, 481 U.S. 739, 741

(1987).  After a hearing, if a judicial officer finds that "no

condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other

person and the community, such judicial officer shall order the

detention of the person before trial."  18 U.S.C. § 3142(e)(1).

    A separate statute, the INA, 8 U.S.C. § 1101, et seq., charges

the United States Secretary of Homeland Security with the

administration and enforcement of the INA and other immigration laws.

Under the INA, ICE is authorized to detain, or in some cases required

to detain, individuals who are subject to removal.  See 8 U.S.C.

§ 1225(b) (requiring mandatory detention of individuals deemed to be

"arriving aliens."); 1226(a)(1) (authorizing discretionary detention

pending removal.).  Specifically, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV),

"Mandatory Detention," states that any arriving alien "shall be

detained pending a final determination of credible fear of

persecution ... until removed."

    Section 1226(a) of the INA also provides the Attorney General

discretion to arrest and detain an individual "pending a decision on

1    whether the alien is to be removed from the United States."  8 U.S.C.

2    § 1226(a).   If the Attorney General grants parole, she may revoke

3    bond or parole "at any time," and may "rearrest the alien under the

4    original warrant, and detain the alien."   8 U.S.C. § 1226(b)

5    (emphasis added).   In short, the INA permits immigration authorities

6    to rearrest individuals subject to removal for any reason, at any

7    time, pending a removal decision.

8         **B.    Applicable Detention Authority Under the INA**

9         Both 8 U.S.C. §§ 1225(b) and 1226(a)(1) apply here.  First, as

10   an alien who presented himself for admission at the border, defendant

11   is classified as an "arriving alien" under 8 U.S.C. § 1001.1(q), that

12   is, "an applicant for admission coming or attempting to come into the

13   United States at a port-of-entry."   8 U.S.C. § 1226(b) applies to

14   "arriving aliens" like defendant and sets forth procedures for the

15   inspection or detention of aliens who are applicants for admission to

16   the United States. See generally, 8 U.S.C. § 1225. 8 U.S.C. §

17   1226(b)(1)(B)(IV) requires mandatory detention until removed.[2]

18        Alternatively, 8 U.S.C. § 1226(a)(1) provides the discretionary

19   authority to detain noncitizens pending removal, "on a warrant issued

20   by the Attorney General."   See 8 U.S.C. § 1226(a)(1).

21

22

23

24

25

26        [2] Defendant will be entitled to a Rodriguez bond hearing after
     he is in ICE custody for six months.  See Rodriguez v. Holder, No. CV
27   07-3239 TJH (RNBx), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), aff'd
     in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060
28   (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281
     (2018).

**IV.   ARGUMENT**

     **A.   The Immigration and Nationality Act is Independent of the
Bail Reform Act**

    ICE's authority to detain defendant pursuant to the INA is
separate and apart from the Court's authority to detain or release
defendant under the Bail Reform Act.  See Diaz-Hernandez, 943 F.3d at
1199 (9th Cir. 2019).  Defendant's argument to the contrary, premised
on a district case from Oregon, fails.  United States v. Trujillo-
Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012).  Trujillo-Alvarez is not
binding precedent on this Court, ignores the independent detention
authority prescribed by the INA, and was issued before the Ninth
Circuit's decision in Diaz-Hernandez.

    Consistent with the Ninth Circuit's explanation in Diaz-
Hernandez that detention under the Bail Reform Act and detention
under the INA are "separate functions that serve separate purposes
and are performed by different authorities," six other circuits have
rejected defendant's claim that the government cannot pursue a
criminal prosecution while an alien is detained by immigration
authorities.  See Soriano Nunez, 928 F.3d at 245 (3d Cir. 2019)
(holding that pre-trial release under the Bail Reform Act does not
preclude pre-removal detention under the INA and that "No court of
appeals that has examined this assertion has concluded that pretrial
release precludes pre-removal detention"); United States v. Lett, 944
F.3d 467, 471 (2d Cir. 2019) ("the Bail Reform Act and the INA
authorize the government to pursue both criminal prosecution and
removal simultaneously, and there is no conflict between the
detention-and-release provisions of the two statutes."); United
States v. Baltazar-Sebastian, 990 F.3d 939, 944-45 (5th Cir. 2021)

1   (same); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir.

2   2018) ("ICE may fulfill its statutory duties under the INA to detain

3   an illegal alien pending trial or sentencing regardless of a Bail

4   Reform Act release determination."); United States v. Pacheco-Poo,

5   952 F.3d 950, 953 (8th Cir. 2020) (same); United States v. Vasquez-

6   Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019) (same).

7       Taking Lett, for example: the defendant was a citizen of

8   Trinidad and Tobago and was arrested at John F. Kennedy International

9   Airport after CBP found 2.12 kilograms of cocaine in his suitcase.

10  944 F.3d at 469.  "CBP paroled Lett into the United States for

11  criminal prosecution and transferred him to the custody of the Bureau

12  of Prisons ("BOP"), and the government filed a criminal complaint

13  charging Lett with importing cocaine...."  Id.  Meanwhile, ICE lodged

14  an immigration detainer against him.  Id.  Ultimately, the district

15  court ordered Lett's release pending his criminal case.  Id.  Then

16  ICE acted on the lodged detainer and took the defendant into ICE

17  custody following his release from BOP, and initiated removal

18  proceedings.  Id.  "Lett filed a motion to dismiss the indictment in

19  his criminal case, arguing that his continued detention by ICE

20  violated the Bail Reform Act."  Id.  The district court dismissed the

21  Indictment holding that the government needed to decide whether to

22  criminally prosecute or remove Lett but could not proceed

23  simultaneously.  Id. at 469-470.  The Second Circuit vacated this

24  decision finding that the Bail Reform Act and the INA "serve

25  different purposes, govern separate adjudicatory proceedings, and

26  provide independent statutory bases for detention," and therefore

27  "the government's authority to detain an alien pursuant to the INA"

28

8

1  does not disappear merely because he cannot be detained under the

2  Bail Reform Act pending his criminal trial.  Id. at 470.

3       Here, ICE acted on their immigration detainer, which was lodged

4  prior to defendant's grant of bond, and took defendant into ICE

5  custody pursuant to its detention authority under the INA.  Contrary

6  to defendant's position, the government is not required to choose

7  what proceedings to pursue and may pursue both removal and criminal

8  proceedings simultaneously as authorized by statute.  For this

9  reason, the Court should deny defendant's emergency request for

10 defendant's release from immigration custody.

11       **B.    Defendant Has Reasonable Access to Counsel**

12       The Court should also deny defendant's request for dismissal of

13 the Indictment on grounds of inadequate access to counsel.  Desert

14 View Annex's attorney visitation policy is not overly restrictive as

15 to constructively deny defendant's access to counsel.  While defense

16 counsel may be inconvenienced by the distance they must travel to see

17 defendant or the pre-planning required to schedule appointments and

18 make time to visit their client, defendant and his counsel are

19 entitled only to "reasonable" access not "the most convenient"

20 access.  In fact, courts have rejected defendant's argument that the

21 length of travel constitutes deprivation of counsel, including the

22 Ninth Circuit.  See United States v. Lewis, 873 F.2d 1279, 1280 (9th

23 Cir. 1989) (finding that defendant was not denied access to counsel

24 because the 120-mile distance between him and his counsel did not

25 actually or constructively deny him the assistance of counsel

26 altogether); Ekene v. Cash, 2012 WL 4711723, at *12 (C.D. Cal. May

27 14, 2012)(citing Lewis, 873 F.2d 1279); Pino v. Dalsheim, 558 F.

28 Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts

1  have noted that "travel inconvenience of an attorney ... does not

2  reach the level of a constitutional violation.").

3      Here, defendant is not precluded from seeing defense counsel and

4  may do so either in person or virtually, 24 hours a day, seven days a

5  week.  In-person visits can be by appointment or by walk-in.

6  Appointments can be made up to a week in advance.[3]  Additionally, in-

7  person visits are not subject to any time limit.  Instead, this

8  limitation applies only to video conference and is to ensure

9  equitable access to all detainees.  Further, the clearance for

10 translators and paralegals is not overly burdensome as it takes

11 approximately fifteen minutes to gain clearance.  Accordingly,

12 defendant has reasonable access to counsel.  He has not shown

13 otherwise, nor has his counsel alleged that they have made attempts

14 to access their client that have been denied or frustrated.

15      **C.   Dismissal Is Inappropriate Without a Showing of Injury and
             Prejudice**

16

17     In United States v. Morrison, the Court ruled that the remedy

18 for a violation of a defendant's Sixth Amendment right to counsel

19 "should be tailored to the injury suffered from the constitutional

20 violation and should not unnecessarily infringe on competing

21 interests." 449 U.S. 361,364 (1981); see also United States v.

22 Zarate, 2019 WL 6493927 (D. Nev. Dec. 2, 2019).  While the Court in

23 Morrison did leave the door open for potential dismissal on a record

24 that reflects continuing prejudice, see Morrison, 449 U.S. at 367,

25

26 ───────────────

27     [3] Defense counsel alleges that appointments must be made "at
   least" one week in advance.  Defendant's Ex Parte Application, Dkt.
   40 at 3, 9 (emphasis added).  This misreads Dessert View Annex's

28 visitation policy which states that appointments can be made "up to"
   one week in advance.  Peterson Decl. ¶4, Ex. 1, ¶5 (emphasis added).

10

1    fn. 2, defendant here has not shown continuing prejudice, let alone

2    actual injury.

3         The procedural history in Zarate is virtually identical to the

4    facts in this case.  There, ICE detained defendant pending removal

5    proceedings following release under the Bail Reform Act.  See Zarate,

6    2019 WL 6493927 at *1.  In Zarate, unlike here however, defendant was

7    actually prevented from seeing her defense counsel for a short period

8    while in ICE custody.  Defendant in Zarate raised virtually the same

9    arguments that defendant is making in this case, but the court

10   relying on Morrison, held that defendant "does not even approach

11   demonstrable prejudice from the short period that her counsel were

12   unable to meet with her."  Id. at *4.  The Zarate court held that

13   even if defendant's ICE custody rose to the level of deprivation of

14   counsel -- the court found that it did not -- the remedy would not be

15   dismissal of the indictment.  Id.

16        To the extent defendant is concerned that his detention pending

17   removal proceedings will infringe on his constitutional rights, the

18   government has already coordinated with ERO to ensure defendant's

19   transportation from ICE custody to future criminal proceedings in

20   this matter.  Cf. United States v. Santos-Flores, 794 F.3d 1088, 1090

21   (9th Cir. 2015) (holding that a district court may "craft an

22   appropriate remedy" if immigration detention "jeopardizes the

23   district court's ability to try him").  As a result, a request to

24   dismiss the criminal case at this time is premature.  See, e.g.,

25   United States v. Yostin Sleiker, et al., 5:25-mj-00140-KK, Criminal

26   Minutes, Dkt. 26 (C.D. Cal. Apr. 8, 2025) (deferring ruling on an

27   emergency motion for release from immigration custody after being

28   released on bond under the Bail Reform Act).

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's emergency request for release from ICE custody or dismissal of the Indictment.